Filed 4/20/22  P. v. Floyd CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089078 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE019822) |
| v. | OPINION ON TRANSFER |
| JEFFREY VAUGHN FLOYD, | |
| Defendant and Appellant. | |

A jury found defendant Jeffrey Vaughn Floyd guilty of being a felon in possession of a firearm, along with a gang enhancement for committing the crime for the benefit of and in association with a criminal street gang.  With a strike and enhancements, he was sentenced to an aggregate 13-year term.

Defendant contends insufficient evidence supported the gang enhancement.  He maintains that his possession of a firearm -- as a rap artist, making a rap video -- was intended to facilitate his art and thus was not possessed for the benefit of and/or in

1

association with a criminal street gang with the intent to promote, further or assist in any criminal conduct by gang members.

In an unpublished opinion, we concluded that substantial evidence supported defendant's gang enhancement. (*People v. Floyd* (Nov. 17, 2021, C089078) [nonpub. opn.].) Doing so, we explained that this is not an either-or proposition: a gang member can have multiple motives for his conduct and those motives can be both personal and gang related. We, however, agreed with defendant's other contentions concerning Senate Bill No. 136 (2019-2020 Reg. Sess.) and Senate Bill No. 1393 (2017-2018 Reg. Sess.). We accordingly struck defendant's prison term imposed under Penal Code[1] section 667.5, subdivision (b) and remanded to allow the trial court to consider whether to dismiss his section 667, subdivision (a) enhancement in furtherance of justice under section 1385, subdivision (a).

On February 9, 2022, the Supreme Court granted review and transferred the matter back to us with directions to vacate our original decision and reconsider the cause in light of Assembly Bill No. 333 (Stats. 2021, ch. 699). On transfer, the People now concede the evidence was insufficient to establish the gang enhancement under Assembly Bill No. 333's heightened requirements, and remand is therefore appropriate. We accept the concession. We will now strike the gang enhancement and remand for further proceedings.

---

[1] Undesignated section references are to the Penal Code in effect at the time of the charged offenses.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Prosecution's Evidence*

A

*The Charged Incident*

On October 23, 2017, multiple gang suppression officers arrived at an apartment complex in Sacramento to execute a felony arrest warrant on Clarence Starnes. The complex was in an area known to be occupied and frequented by members of the Trigga Mob gang. When the officers arrived, five men, including defendant, took off running. Defendant, Starnes, Legend Lewis, Kenneth Andrews, and Coddie Williams were ultimately arrested. Three loaded handguns were recovered from the opposite side of a nearby fence -- a .45-caliber semiautomatic and two nine-millimeter semiautomatics.[2] A loaded nine-millimeter semiautomatic was found on Lewis.

Recovered from Williams was a GoPro video camera containing video clips recorded that day at the apartment complex. In one video clip, defendant is depicted holding a handgun and taking apparent direction from someone behind the camera to put the gun in his pocket and pull it out on cue. The gun defendant held was one of the guns found on the other side of the fence. Another clip depicts a simulated robbery and shooting. It begins with Starnes taking a backpack off his back, opening it up and showing the contents to defendant and Andrews. Defendant then removes a handgun from the backpack in an apparent theft. Starnes then runs around the corner of a building, and defendant and Andrews chase Starnes simulating a shooting as Starnes falls to the ground. Another clip shows the chase from the opposite direction and Andrews pointing a handgun as he runs. In another clip, defendant is seen rapping with several men behind

---

[2] Defendant was charged with possessing the three handguns found on the opposite side of the fence. The prosecution argued that they were jointly possessed by defendant and other gang members.

him at the corner of the building where the simulated robbery/shooting took place. Lewis and Andrews brandish handguns in the background while defendant counts a stack of money and raps.

B

*The Gang Expert Testimony*

At trial, several gang experts testified, providing the following testimony. Defendant, Starnes and Andrews are Trigga Mob gang members.[3] The area where the arrest took place is "dominated by" Trigga Mob. The primary activities of Trigga Mob are robbery, felon in possession of a firearm, assaults with firearms and other firearm-related crimes.[4] The "three main pillars" of Trigga Mob are generating revenue through legal and illegal means, power, and respect. The gang's power comes from possessing firearms and having influence in the community "so that way they can get away with their criminal activities without the threat of community members calling the police." They gain respect by their activities and the crimes they commit causing intimidation and fear in the community and other gang members.

One of the primary means of communication between rival gangs in Sacramento is through rap music videos. Rap music glorifying and bragging about gang violence is central to Sacramento gangs. Sacramento gangs post rap videos online to call out other gangs and to claim themselves as more violent. Gangs will also brag online about crimes, violence, and shootings

---

[3] Regarding defendant, in summary, the expert based his opinion on defendant's association with Trigga Mob gang members, posting videos that contain gang-related indicia, and defendant displaying gang-related hand signs in those videos.

[4] One expert testified to two predicate offenses committed by Trigga Mob members: a 2015 conviction for possession of a controlled substance for sale and possession of an assault weapon, and a 2013 conviction for possession of a concealed firearm.

Trigga Mob made a number of rap videos at the apartment complex where the arrests took place. In the videos, Trigga Mob gang members disrespect rival gangs. In the three years preceding the charged incident, numerous YouTube videos and Facebook photos were posted on the Internet featuring defendant, referencing gang-related incidents and insulting rival gangs. And in one video, defendant pledges allegiance to "my organization," which the expert opined was Trigga Mob.

Trigga Mob has been involved in back and forth videos with rival gangs. A "dis" rap video would be released and the rival gang would respond with violence and then rap about what they had done and "throw a dis back towards the other side." And because of the violence, gang members armed themselves with firearms so they would not "get caught slippin."

One expert opined on the meaning of several lyrics in the video recovered on the day of the arrest. Defendant's lyric, " 'All that money we was makin', even if we have to strip a nigga naked we would do it,' " referenced an assault that occurred five days before the charged incident, where Trigga Mob members assaulted a member of a rival gang. As to the lyric " 'Gucci on the plate for the pistol like it's the fashion, south sac, back to back, Trigga,' " the expert opined that "Gucci" is a reference to the two-G symbol for Gucci which is associated with the Guttah Gas gang, a Trigga Mob ally; "Trigga" referred to the Trigga Mob gang.

In response to a hypothetical based on the facts of this case, an expert opined that defendant possessed the charged firearms for the benefit of the Trigga Mob gang and in association with Trigga Mob gang members.

Regarding gang benefit, the demonstration of firearm possession in music videos benefits Trigga Mob because it shows the gang's ability to get firearms as well as its ability to commit violent crimes as a group. This increases the gang's influence in the community and its ability to continue criminal activities without community members calling the police. For example, the video that the gang suppression unit interrupted

5

involving a simulated robbery and shooting "showcase[d] the kind of behavior that they would participate in with that firearm." It also showed the ability of the gang to commit acts of violence as a group.

Regarding gang association, the firearm possession here was in association with Trigga Mob because there were multiple validated Trigger Mob members at the video shoot. And "[t]here are multiple members who are in possession of firearms illegally, whether it be due to the firearm itself, the condition that it's in, being that they're loaded, being that they're unregistered, being that they're being concealed in public."

## C

### *Defense Evidence*

The defense maintained that defendant's firearm possession was merely a prop used to further his rap career, and he was not possessing it to promote Trigga Mob. The defense presented evidence that in the 11 months preceding the incident, defendant was living with his father and attending a music school in Riverside. Aside from the day of his arrest in the charged incident, defendant had not traveled to Sacramento since moving south.

## D

### *Verdict And Sentencing*

The jury found defendant guilty of possession of a firearm by a felon and found true a street gang enhancement. The trial court found that defendant had a prior serious felony conviction and had served a prior prison term for unlawful possession of a firearm.

The trial court sentenced defendant to an aggregate 13-year term, calculated as follows: four years for possessing a firearm (the middle term doubled for the strike), plus the three-year middle term for the gang enhancement, five years for the prior serious felony enhancement, and one year for the prior prison term enhancement.

## DISCUSSION

## I

*Substantial Evidence And Assembly Bill No. 333*

As the parties agree, reversal of the gang enhancement is now warranted. Assembly Bill No. 333 amends the gang enhancement statute, section 186.22, to require, among other things, that the predicate offenses used to establish a pattern of criminal gang activity, "commonly benefit[] a criminal street gang, and the common benefit of the offense is more than reputational . . . ." (§ 186.22, subd. (e)(1).) Prior to Assembly Bill No. 333, it was unnecessary to prove predicate offenses were gang related. (See *People v. Gardeley* (1996) 14 Cal.4th 605, 609-610, ["We disagree that the predicate offenses must be 'gang related' "].)

To that, the People now concede that substantial evidence no longer satisfies the gang enhancement's requirements. At trial, evidence of two predicate offenses by Trigga Mob members was offered but no details regarding those offenses were presented. The evidence, therefore, could not establish that these offenses benefited a criminal street gang in a manner that was more that reputational. The gang enhancement, the People concede, must therefore be reversed, and the prosecution should be afforded an opportunity to retry defendant under the new requirements of Assembly Bill No. 333.

We accept the People's concession. And because Assembly Bill No. 333 is an ameliorative amendment, and defendant's conviction is not yet final, it applies with retroactive effect to him. (See *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822 [Assem. Bill No. 333 applies to all nonfinal cases on appeal].) We will therefore strike the gang enhancement and remand to afford the prosecution the opportunity to retry defendant under Assembly Bill No. 333's new requirements.

7

## II

### *The One-Year Prior Prison Term Enhancement*

Defendant also contends the one-year prior prison term enhancement (§ 667.4, subd. (b)) must be stricken in light of Senate Bill No. 136. The People concede the issue, and we agree.

Senate Bill No. 136 became effective on January 1, 2020, and amends section 667.5(b) to authorize a one-year prior prison term enhancement only if a defendant served a prior prison term for a sexually violent offense. It applies retroactively to defendants whose judgments are not yet final. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 761, 772; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341.)

Here, defendant's prior prison term for a previous firearm possession did not arise from a sexually violent offense. We will therefore modify the judgment to strike the enhancement.

## III

### *The Five-Year Serious Felony Enhancement*

Finally, defendant contends remand is required because the trial court was unaware of its discretion to strike the section 667, subdivision (a) five-year prior serious felony enhancement following Senate Bill No. 1393's enactment. In support, he points to the trial court's statement during sentencing, "*I have to* add another five consecutive for the 667(a) so-called five-year nickel prior." (Italics added.)

The People respond that remand is unwarranted because the trial court understood its discretion and in fact denied defendant's *Romero*[5] request to strike the prior serious felony enhancement alleged as a strike conviction. We agree with defendant.

---

[5] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

8

## A

### *Additional Background*

Defendant was sentenced one month after Senate Bill No. 1393 took effect, affording trial courts discretion to strike prior serious felony enhancements imposed under section 667, subdivision (a).

Prior to sentencing, defendant asked the trial court to strike his prior strike conviction and his prior prison term enhancement. As part of the request, defense counsel wrote, "adding an additional five years and doubling the base term would be unusually harsh." Defendant did not expressly ask the court to strike or dismiss the separate section 667, subdivision (a) enhancement, either in writing or orally at sentencing.

Denying defendant's request, the trial court stated: "having looked at all of the facts that I'm required to look at in terms of sentencing factors, the objectives of the *three strikes law* and the defendant, I conclude that at this point that you cannot make a credible case that the defendant would be deemed *outside the spirit of the three strikes* law and the scheme; and therefore, I'm going to deny the motion to strike the strike and also to strike the -- either to the strike itself or the punishment for any of these enhancements." (Italics added.)

Later, when summarizing the aggregate sentence, after stating the sentences for the firearm possession count, the gang enhancement and the prior prison term, the court stated: "And then *I have to add* another five consecutive for the 667(a) so-called five-year nickel prior, that will be consecutive. Total aggregate time, 13 years state prison." (Italics added.)

## B

### *Analysis*

A criminal defendant is entitled to " 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its

9

discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)  Where the record shows the trial court proceeded with sentencing on the assumption it lacked discretion, remand is necessary to afford the trial court an opportunity to exercise its sentencing discretion at a new sentencing hearing. (*Ibid.*)

On this record, we are not sure the court was aware of its newly authorized discretion to strike the prior serious felony enhancement.  The statement, "And then I have to add another five consecutive" indicates the court may have been operating under the pre-Senate Bill No. 1393 rule, wherein the section 667, subdivision (a) enhancement sentence was mandatory.  (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971-972).  Nothing stated as part of the *Romero* request convinces us otherwise.  Indeed, it appears the trial court's singular focus in ruling on the *Romero* motion was whether defendant should be "deemed outside the spirit of the three strikes law."

Accordingly, we will remand to allow the trial court to consider exercising discretion to strike or dismiss the section 667, subdivision (a) enhancement "in furtherance of justice" under section 1385, subdivision (a).

## DISPOSITION

We modify the judgment to strike the section 667.5, subdivision (b) prior prison term enhancement, as well as the section 186.22, subdivision (b)(1) gang enhancement. We remand to allow the trial court to consider exercising its discretion to dismiss or strike the section 667, subdivision (a) prior serious felony enhancement in furtherance of justice under section 1385, subdivision (a), as well as to afford the prosecution an opportunity to retry the gang enhancement under Assembly Bill No. 333's new requirements.

The trial court is directed to prepare an amended abstract of judgment and to send a certified copy to the Department of Corrections and Rehabilitation.  In all other respects we affirm.

10

　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　Robie, Acting P. J.

We concur:


　/s/
Duarte, J.


　/s/
Krause, J.

11